UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MILDRED ROSTOLDER, d/b/a NORTH
AMERICAN TRANSFER CO.,

                        Plaintiff,

    - against -

LIFE ENERGY AND TECHNOLOGY
HOLDINGS, INC., now known as GLOBAL
ENVIRONMENTAL ENERGY CORP. (Bahamas)
and MEDICAL INDUSTRIES HOLDING, INC.,

                       Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**
03-CV-3375 (SMG)

**Gold, S.,** *United States Magistrate Judge***:**

      Presently before the Court are plaintiff's two applications for attorneys' fees and costs, each made pursuant to an agreement between plaintiff Rostolder and Life Energy and Technology Holdings, Inc. ("LETH") to pay all of Rostolder's legal fees. Plaintiff seeks a total of $490,315.94 in legal fees and expenses, composed of $172,489.66 in fees and costs for the period covering July through December, 2004 (the "2004 period") and $317,826.28 in fees and costs for the period covering January, 2005 through March, 2006 (the "2005 - 2006 period"). Docket Entries 59, 112. For the reasons that follow, plaintiff's applications are granted in part and denied in part.

## Background

      Mildred Rostolder was LETH's stock transfer agent and possessor of certain LETH stock certificates at the time she filed her complaint in 2003. Compl. ¶¶ 6, 12. Rostolder brought an interpleader suit in response to adverse claims by LETH and Medical Industries Holding, Inc. ("MIH") concerning who was the rightful owner of a particular stock certificate for 750,000

shares of LETH. Compl. ¶ 4. In its answer, MIH filed a counterclaim against plaintiff, exposing Rostolder to joint and several liability totaling at least $2,000,000. Docket Entry 21.

The case began as a relatively simple contract dispute concerning stock ownership but ultimately developed into a complex conflict requiring legal analysis of corporate successorship. In January, 2005, I granted plaintiff's application for asset discovery of LETH's principal based on her concern that she would be held responsible if a large judgment were entered and LETH was financially unable to pay it. After plaintiff's discovery of LETH's assets, plaintiff filed an application for a Temporary Restraining Order against Global Environmental Energy Corporation, a Bahamian corporation, ("GEEC Bahamas"), arguing that LETH had reincorporated as GEEC Bahamas in order to avoid its creditors. After extensive litigation of the issue, I held that LETH has in fact been succeeded by Global Environmental Energy Corporation (Bahamas), GEEC Bahamas.[1] *See* Docket Entries 80, 84. Upon the substitution of GEEC Bahamas for LETH, GEEC Bahamas failed to appear through counsel as ordered. *See* Docket Entry 92. Accordingly, LETH's answer was stricken and a default judgment against GEEC Bahamas in favor of MIH was entered on June 23, 2005. *Id*.

*LETH's Indemnification of Rostolder*

At the time she filed her complaint, plaintiff, as an interpleader, had no financial interest in the outcome of this case but merely sought to avoid inconsistent judgments concerning the stock certificate. As noted above, however, plaintiff faced multi-million dollar liability jointly

---

[1] LETH argued that its successor-in-interest is Global Environmental Energy Corporation, a Delaware corporation ("GEEC Delaware") that is in bankruptcy proceedings in Louisiana. I rejected this argument and found that Global Environmental Energy Corporation, a Bahamian corporation, is the true successor-in-interest. *See* Docket Entries 80, 84.

2

and severally with LETH after MIH filed its answer. Accordingly, Rostolder entered into a Stipulation and Order of Indemnity ("Stipulation and Order") with LETH dated November 20, 2003, and signed by the Court on December 2, 2003. Docket Entry 28. The Stipulation and Order provides, among other things, that LETH will pay all of Rostolder's legal fees and disbursements in this action, including fees associated with her defense of the counterclaims, through final judgment. *Id*. at ¶ 3.

Plaintiff recovered some prior fees from LETH and now seeks counsel's fees for the remainder of the litigation. Pursuant to a stipulation dated April 4, 2004, LETH "agree[d] to the immediate entry of judgment . . . in the sum of $87,034.56" for legal fees calculated through February, 2004. Docket Entry 31, ¶ 3. This sum was in addition to $50,000 in legal fees LETH paid Rostolder the prior month. *Id*. On September 27, 2004, I entered a consent judgment against LETH in the amount of $60,238.27 for fees from March through June, 2004.[2] Docket Entry 45.

The motions now before the court concern fees incurred after June, 2004. On January 20, 2005, plaintiff filed a motion for entry of an interlocutory judgment for legal fees covering the period from July through December, 2004. Docket Entry 59.[3] LETH's counsel at the time objected to plaintiff's application, arguing that the fees sought were excessive and unreasonable.

---

[2] In her January 20, 2005 application, plaintiff noted that LETH had failed to pay the two prior judgments of $87,034.56 and $60,238.27, totaling $147,272.83. Docket Entry 59. Although plaintiff references these prior judgments in her motion for fees filed on April 12, 2006, it is not clear whether these judgments are still outstanding, and plaintiff has not in any event sought any specific relief with respect to them at this time. Docket Entry 112.

[3] I stayed plaintiff's application for fees for the 2004 period pending GEEC Delaware's appeal to the Second Circuit of my order finding GEEC Bahamas as LETH's successor-in-interest. GEEC Delaware withdrew its appeal on March 31, 2006. Docket Entry 113.

Docket Entry 62. On April 12, 2006, plaintiff filed a motion for default judgment seeking attorneys' fees for the period covering January, 2005 through March, 2006.[4] Docket Entry 112.

**Discussion**

The Stipulation and Order agreed to by Rostolder and LETH specifically provides for indemnification of attorneys' fees incurred by Rostolder in this action. Docket Entry 28. Nevertheless, a court should award only the amount of attorneys' fees that are reasonable, even where an agreement provides for indemnification. *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987); *Toporoff Engineers, P.C. v. Fireman's Fund Ins. Co.*, 2006 WL 1539341, at *2 (S.D.N.Y. June 5, 2006); *Am. Casualty Co. of Reading, Penn. v. Morgan-White Underwriters, Inc.*, 2003 WL 23374768, at *9 (S.D.N.Y. Sept. 30, 2003).

In the Second Circuit, courts use the lodestar method in determining a reasonable attorneys' fees award. *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058 (2d Cir. 1989). The lodestar calculation is the product of the hours reasonably expended multiplied by a reasonable hourly rate. *Chambless*, 885 F.2d at 1058. In addition, all requests for attorneys' fees in this Circuit must be accompanied by contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

---

[4] Rostolder has not paid any of the legal fees incurred by Snow, Becker, Krauss, P.C. for the 2004 period or the 2005 - 2006 period. Moreover, she has assigned her rights to indemnification to Snow, Becker, Krauss, P.C. Affidavit in Support of Default Judgment, Docket Entry 112, Ex. 9.

*A. Hourly Rates Charged by Plaintiff*

During the 2004 period, three attorneys and one paralegal performed the majority of the legal services at issue. Plaintiff seeks reimbursement for these individuals at the following hourly rates: Kurland, an attorney with 35 years of litigation experience and co-chair of the firm's litigation department, $425; Cuddy, an attorney with 25 years of litigation experience, $325; Lackowitz, an attorney, $225; Emeric, a paralegal, $125.[5] Docket Entry 59, Ex. 2; Docket Entry 112, Cuddy Affidavit ¶¶ 28-29. In plaintiff's counsel's affidavit in support of the second application for fees, counsel states that Kurland's and Cuddy's rates "are reasonable and consistent with those rates charged for comparable services by attorneys with comparable experience in the New York Metropolitan area." Cuddy Affidavit, Docket Entry 112, ¶ 26. Plaintiff, however, offers no evidence of the current rates for comparable attorneys in this district other than counsel's own conclusory statement.

In determining a reasonable hourly rate, courts consider whether "the requested rates are in line with those prevailing in the community for similar service by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 1547 (1984). The relevant community is the district in which the action is commenced. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 97 (2d Cir. 2004). *See also Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2006). Courts in the Eastern District of New York have recognized the "unique circumstances of

---

[5] Plaintiff fails to provide any information identifying Lackowitz and Emeric and any justification for their rates. Indeed, the online attorney directory of Snow, Becker, Krauss does not list any attorney with the surname Lackowitz. *See http://www.sbklaw.com*. Based on the Court's review of the work performed by these individuals, however, it appears that Lackowitz is a junior attorney and Emeric is a paralegal.

attorneys in New York City who practice in two federal jurisdictions [the Eastern and Southern Districts of New York] within the same city." *New Leadership Comm. v. Davidson*, 23 F. Supp. 2d 301, 305 (E.D.N.Y. 1998). *See also Nicholson v. Williams*, 2004 WL 4780498, at *10-12 (E.D.N.Y. Apr. 5, 2004); *Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 64 (E.D.N.Y. 2003). The Second Circuit, however, has cautioned that courts must find "exceptional circumstances" to justify deviating from the rule that the relevant community is the district in which the action lies. *Arbor Hill*, 369 F.3d at 97.

The rates sought by counsel are consistent, albeit at the high end of the spectrum, with those awarded for litigation in the Southern District of New York, where plaintiff's counsel's office is located. *See*, *e.g.*, *Ling v. Cantley & Sedacca, L.L.P.*, 2006 WL 290477, at *4 (S.D.N.Y. Feb. 8, 2006) (awarding an hourly rate of $450 for partners and a rate of $400 for senior associates with 13 years experience); *Martinez v. Port Auth. of New York and New Jersey*, 2005 WL 2143333, at *26 (S.D.N.Y. Sept. 2, 2005) (awarding an hourly rate of $325 to $400 for attorneys with 16 to 20 years experience respectively); *Ashkinazi v. Sapir*, 2005 WL 1123732, at * 3 (S.D.N.Y. May 10, 2005) (awarding an hourly rate of $425 for "an experienced litigator" with 26 years experience). Recent cases awarding fees in the Eastern District of New York, however, indicate that plaintiff's rates are unreasonably high for this district. *See*, *e.g.*, *Atlantic Recording Co. v. Elizabeth Records, Inc.*, 2006 WL 1027151, at *1-2 (E.D.N.Y. Apr. 14, 2006) (awarding rates of $250 for partners, $150 for associates, and $70 for paralegals); *Comm'n Express Nat'l, Inc. v. Rikhy*, 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006) (awarding rates of $300 for partners, $200-250 for senior associates, and $75 for paralegals); *Aiello v. Town of Brookhaven*, 2005 WL 1397202, at *5-7 (E.D.N.Y. June 13, 2005) (awarding rates of $250-350

for partners and senior associates, $150 for junior associates, and $100 for paralegals); *Tokyo Electron*, 215 F.R.D. at 64 (awarding an hourly rate of $400 for an experienced senior partner, $280 for senior associates, $180 for junior associates, and $110-115 for paralegals). Indeed, the Court is not aware of any case in the Eastern District of New York awarding rates over $400 an hour. Moreover, plaintiff bears the burden of establishing that the requested rate is reasonable and in line with comparable attorneys of the same skill and experience in the relevant community. *See Blum*, 465 U.S. at 896 n.11, 104 S. Ct. 1547. Accordingly, the rates sought by plaintiff in this action are reduced as follows: Kurland – $400, Cuddy – $300, Lackowitz – $150, and Emeric – $100.[6] These rates are at the high end of the spectrum for the Eastern District, but they reflect the skill, quality, and experience of the attorneys, as well as the specialization required by the complications of this case. *See Aiello*, 2005 WL 1397202, at *7.

In addition to the individuals identified above, plaintiff's application for fees for the 2005 - 2006 period charged for work performed by individuals identified only by their initials – "JB," "MW," "EH," "MJL," and "RSH." Plaintiff billed these individuals' work at hourly rates ranging from $350 to $430. Plaintiff has not proffered any information identifying these individuals or any justification for these high rates. Thus, the rate for these attorneys should be reduced to $150. *See Aiello*, 2005 WL 1397202, at *7 (awarding the lowest rate where plaintiff failed to provide any information regarding particular attorneys' skill, experience or reputation).

---

[6] During the 2004 period, plaintiff billed for a D.P. Schneidman at an hourly rate of $180 and for C. Snow at a rate of $450. Again, there is no information identifying these individuals and no justification for their rates. Accordingly, I reduce Schneidman's rate to $150 because it is clear from the time records that Schneidman is an attorney. It is evident that Snow is one of the partners in the firm and, for the same reasons discussed above with respect to Kurland, Snow's rate is reduced to $400.

B.  *Time Expended*

Without question, plaintiff's counsel seeks to recover a large fee. In this case, however, complex and protracted litigation of corporate successor liability, necessitated by LETH's own actions of reincorporating in the Bahamas, led to a significant portion of the time expended. *See, e.g.*, *Landmark Chems., SA. v. Merrill Lynch & Co.*, 234 F.R.D. 62, 64 (S.D.N.Y. 2005) (noting that plaintiff bore some responsibility for protracting the proceedings, which justified, in part, the reasonableness of the hours expended by interpleader). Nevertheless, a number of factors suggest that the time plaintiff expended on this litigation was somewhat excessive and unreasonable.

1.  *Duplicative Work by a Senior Attorney*

It was excessive and duplicative to have two senior attorneys working on the case. Indeed, both Kurland and Cuddy repeatedly billed for attending and preparing for the same conferences and depositions. *See, e.g.*, Billing Entries for July 8, 2004, Aug. 18, 2004, Oct. 8 and 20, 2004, Jan. 14, 28, 31, 2005, Apr. 19, 2005, May 16 and 26, 2005, June 14 and 20, 2005, July 13, 15, 18, and 19, 2005, Aug. 11, 2005, Sept. 13, 2005, Oct. 17, 2005, Dec. 2 and 5, 2005, Jan. 31, 2006.[7] Although courts have awarded fees for multiple attorneys attending the same conferences, I do not find that the circumstances of this case warranted two senior litigators attending a majority of the conferences together. *See Daiwa Special Asset Corp. v. Desnick*, 2002 WL 31767817, at *3 (S.D.N.Y. Dec. 3, 2002) (reducing fee award for duplication of attorney efforts).

---

[7] Billing Entries for the 2004 period can be found in Docket Entry 59, Exhibit 2. Billing Entries for the 2005 - 2006 period can be found in Docket Entry 112, Exhibit 8.

2. *Inefficiency*

Moreover, a significant amount of work, especially work performed by Cuddy, could have been completed by a junior attorney. *See*, *e.g.*, *Pascuiti v. New York Yankees*, 108 F. Supp. 2d 258, 267-68 (S.D.N.Y. 2000) (recognizing that courts have reduced fee awards for inefficiency where tasks could have been performed by junior associates rather than partners, but declining to reduce the award based on the facts of the particular case). For example, Cuddy, an attorney with 25 years experience seeking to be awarded $325 per hour, billed time for "digesting" transcripts and "organiz[ing] file" – work that clearly could have been done by a less senior associate at far less cost. *See* Billing Entries for May 6 and 9, 2005, June 28 and 29, 2005, July 7, 8, 11, 14, and 15, 2005. In addition, it is excessive for senior litigators such as Kurland and Cuddy to bill for mundane, administrative work such as scheduling, arranging conferences, and ordering transcripts. *See*, *e.g.*, Billing Entries for Dec. 16, 17, 20, 21, 22, 2004, Jan. 26, 2005, June 3, 6, 24 and 27, 2005.[8] These tasks could have easily been performed by junior attorneys, or even a paralegal, at significant savings. *See*, *e.g.*, *Rosso v. Pi Mgmt Ass'n, L.L.C.*, 2006 WL 1227671, at *2 (S.D.N.Y. May 3, 2006) (reducing fees by an across-the-board percentage based, in part, on "a failure to delegate work to junior, less expensive attorneys").

In particular, plaintiff failed to utilize junior associates during the 2005 - 2006 period. In fact, Lackowitz and the other associates billed only18 hours, or approximately 2% of the work, for the entire 2005 - 2006 period. In contrast, Lackowitz billed approximately 18% of the work during the 2004 period. During the 2005 - 2006 period, counsel could have had junior attorneys,

---

[8] Kurland billed several hours related to "scheduling" in late December, 2004, which is excessive because the Court simply rescheduled a conference from December 15, 2004 to January 4, 2005.

9

instead of Cuddy, performing significantly more work at far less cost. For example, Cuddy spent time "retriev[ing] docs from file for PCK" on January 5, 2005. Similarly, Cuddy billed for "receipt and review" of documents, faxes, and ECF notifications. *See, e.g.*, Billing Entries for Jan. 13 and 27, 2005, June 7, 2005. In January of 2005, Cuddy prepared deposition notices – work that easily could have been performed by inexperienced junior associates in the firm. *See, e.g.*, Billing Entries for Jan. 7, 10, and 11, 2005. On May 13, 2005, Cuddy billed 5 hours for telephone calls to the court and counsel and arranging service of an Order to Show Cause and delivery of courtesy copies to the Court. *See also* Billing Entries for June 15 and 16, 2005. Based on these examples, I find that a significant amount of work during the 2005 - 2006 period could have been performed by junior associates and that a substantial reduction is therefore warranted.

### 3. Block Billing

In many instances, counsel billed for multiple tasks in one block of time, which makes it difficult for the Court to fully assess the reasonableness of the time expended. *See Soler v. G & U Inc.,* 801 F. Supp. 1056, 1061-62 (S.D.N.Y. 1992) ("[C]ommingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities."). The following are some examples of plaintiff's practice of block billing:

- Billing Entry for July 23, 2004 (2.75 hours billed for "Prepare for discovery; Review documents; Telephone calls [to various individuals]")
- Billing Entry for October 27, 2004 (4.00 hours billed for "Prep of admissions; Research Fax No. on pertinent docs; Research Check; Prep of correspondence; Conf. PCK; Review of Docs")
- Billing Entry for January 12, 2005 (3.8 hours billed for "Receipt and review e-mail from Metsch; Modify ltr to Metsch re: Fla. Depositions; Prep of ltr to J. Gold re: LETH application; Receipt and review of [v]arious ECF Court reports and corresp. Scheduling various T/Conf.; Conf. PCK")

10

- Billing Entry for January 25, 2005 (2.75 hours billed for "ECF Activity Report; review letter motion from DeCandido re: renewal of motion to replace McCormack with Wilson for asset EBT and telephonic EBT; prepare opposition; conf. w/ Cuddy; research law; schedule Friday court conference; tel cs Metsch re: schedule")
- Billing Entry for April 18, 2005 (2.80 hours billed for "Review of Notice, review of Boxes of docs, review of filings, Conf. PCK")
- Billing Entry for May 4, 2005 (1.25 hours billed for "Email to & from Rosenbaum; email from Metsch; review, etc.; prepare for response; conf. Snow")
- Billing Entry for July 5, 2005 (2.75 hours billed for "Telephone calls to client and Marisa re insurance - new policy; draft letter to Mark Harmon; telephone conference with Gianna and Barry Grodsky on Louisiana; telephone calls to Joe Ozmer; conference call p.m. with Grodsky and Ozmer.")
- Billing Entry for August 16, 2005 (2.25 hours billed for "Review draft from L. Thompson re: LA lawsuit; give comments; tel. cs. Mildred Rostolder; tel cs. Harmon.")
- Billing Entry for December 15, 2005 (2.50 hours billed for "Receipt and relax of exchange of emails btw Metsch and Guerella; review of draft stip of settlement; t/conf w/ PCK and M. Harmon conf PCK t/conf Texas Marshall and prep of corresp.")
- Billing Entry for January 26, 2006 (1.75 hours billed for "Tel conf Metsch; email to and from Metsch and Harmon - consider structure of settlement.")

Plaintiff's "substantial use of block billing" warrants a reduction in hours because the Court is unable to fully assess the reasonableness of the time expended. *See Aiello*, 2005 WL 1397202, at *2-3.

### 4. *Excessive Billing*

Based on my review of the time sheets, I find that plaintiff's application for attorneys' fees includes excessive billing. First, I note that LETH objected to plaintiff's application for fees for the 2004 period on the grounds that the fees were excessive and unreasonable. Docket Entry 62. For example, LETH objected to being billed over 25 hours for work relating to plaintiff's insurer. *Id*. Additionally, LETH objected to Rostolder billing almost $3,000 for a telephone conference with the Court that LETH alleges lasted no more than 20 minutes. *Id*. These arguments are persuasive and plaintiff has failed to rebut LETH's assertions.

Second, in reviewing the time sheets provided by plaintiff, I find several examples of

time expended that are unreasonable. I note that there are at least two examples of billing errors: 1) on January 3, 2005, Kurland and Cuddy together billed 4.75 hours for attending a court conference, but the docket sheet does not indicate that a conference was held on that day[9] and 2) Cuddy billed 3 hours for attending a conference on September 14, 2005 but the conference occurred the day before, for which he also billed. Additionally, Kurland and Cuddy billed for time spent talking or refusing to talk to reporters. *See*, *e.g.*, Billing Entries for May 20, 2005 and Jan. 12, 2006. Moreover, there are numerous instances of billing by Kurland and Cuddy for "review[ing] file," "review[ing] status," "review[ing] ECF" and the like. *See*, *e.g.*, Billing Entries for Jan. 20, 2005, June 17, 2005, July 25, 2005, Sept. 15, 2005, Oct. 14, 2005, Nov. 14, 2005, Dec. 2, 2005, Feb. 6 and 17, 2006. These charges seem unnecessarily excessive in light of the familiarity with the case Kurland and Cuddy should have developed. As another example, Kurland and Cuddy billed almost 4 hours, totaling nearly $1,400, for drafting, executing and circulating a two-page stipulation consenting to a magistrate judge trial. *See* Billing Entries for May 17, 2005. Again, on June 9, 2005, Kurland billed 1.5 hours for "email from Court re: ECF - Judge Morgan (Va.) order etc." The docket sheet reflects that the only email from the Court on this date was a notification that the Court received Kurland's own submission to the Court. In addition, Kurland and Emeric both billed for travel at their usual rates. *See*, *e.g.*, Billing Entries for July 21, 2004, Jan. 6, 2005, Mar. 2, 2005, May 16 and 19, 2005, June 7 and 30, 2005, July 6, 2005, Aug. 29 and 30, 2005, Sept. 13, 15 and 16, 2005, Mar. 29, 2006. Travel time, however, should be awarded at half of the usual rate. *See Daiwa Special Asset Corp.*, 2002 WL 31767817, at *4. As for Emeric, I find it excessive that he billed more than 3 hours updating the computer

---

[9] The court held a conference on January 6, 2005, for which Kurland properly billed.

case management system during December, 2004 alone. These few examples suggest that the reasonable amount of time expended should be reduced in the lodestar calculation.

In addition, other entries stand out as excessive, but the Court is not able to fully assess their reasonableness because of plaintiff's use of block billing. *See*, *e.g.*, Billing Entries for Jan. 17 and 19, 2005 (3.5 hours billed for reviewing orders from Court, among other things, but the docket sheet reveals that only a routine scheduling order and brief minute entry for a conference held on January 19th were entered at or about that time); Billing Entries for June 9 and 10, 2005 (5.8 hours billed, among other things, in relation to brief letters sent to the court and counsel).

     5.    *Vague Entries*

There are a number of instances of vague descriptions of the work performed that prevent the Court from properly evaluating the reasonableness of the time spent and the fees charged, especially in combination with plaintiff's use of block billing. Although counsel are not required to provide "great detail" describing how time was spent, they must provide sufficient information for the court to adequately assess the time expended. *Aiello*, 2005 WL 1397202, at *2. For the 2004 time period, LETH objected to the vagueness of many of plaintiff's billing entries. *See* Docket Entry 62. The following are some examples of vague billing descriptions that prevent the Court from fully assessing the reasonableness of the fee applications:

- Billing Entry for November 12, 2004 (1.75 hours "re: enforcement of judgment")
- Billing Entry for March 8, 2005 (1.25 hours for "Re: discovery & email from Metsch - review.")
- Billing Entry for March 10, 2005 (1.00 hour "Email from Metsch, fax from Metsch - etc.")
- Billing Entry for June 28, 2005 (2.35 hours "Work on adversary proceeding; review papers; Tel. Cs Metsch; Tel. Cs. Mark Harmon, etc.; review ECF from Court order")
- Billing Entry for September 22, 2005 (1.00 hour "Re: 2nd Circuit Appeal")
- Billing Entry for October 3, 2005 (1.25 hours "re: appeal; review etc.")

- Billing Entry for November 3, 2005 (.65 hours "Re: NY appeal - review email from court - status, etc.")

Moreover, there are many instances of Cuddy billing for "research" without any indication of what he was researching. *See*, *e.g.*, Billing Entries for Feb. 2, 3, 4, and 23, 2005, Apr. 8, 11, and 12, 2005. Similarly, Kurland billed many hours "Re: settlement" without further explanation of the actual work performed. *See*, *e.g.*, Billing Entries for June 6, 2005, Oct. 14, 2005, Feb. 2 and 14, 2006, Mar. 7, 10, 13, and 20, 2006. Although the Court may consider the context of such vague descriptions when determining their reasonableness, *see Aiello*, 2005 WL 1397202, at *2, I am unable to determine the reasonableness of the time spent here despite my review of the docket sheet and general familiarity with the litigation. *See also Rosso*, 2006 WL 1227671, at * 4 (reducing fee award for vague entries such as "Review of documents" which prevent a court from determining "whether the attorney who performed the work spent his or her time effectively").

    6.  *Billing for work that plaintiff has not established as related to this action*

Lastly, there are numerous hours billed concerning other civil actions that appear unrelated to this litigation. For example, counsel billed many hours "RE: CA lawsuit" and concerning a writ of execution in Texas. *See*, *e.g.*, Billing Entries for Aug. 25, 2005, Nov. 4, 8, 10, 14, 21 and 30, 2005, Dec. 13 and 28, 2005, Feb. 16, 2006. Although it is possible that this work was related to this litigation, plaintiff has not established the basis for billing these hours to this case. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). If counsel had filed an affidavit or other additional materials explaining the basis

for these fees, I might be able to award plaintiff these hours. *See McDonald*, 450 F.3d at 96 ("In order to calculate the reasonable hours expended, . . . [a] fee application must be supported by contemporaneous time records, affidavits, and other materials."). Based on the record before the Court, however, there is no basis for awarding plaintiff these fees.[10]

C. *Court's Calculation*

For all these reasons, I am reducing plaintiff's applications for fees by across-the-board percentages. *See Carey*, 711 F.2d at 1146 (recognizing that courts may use percentage reductions as opposed to line-by-line deductions). The following individual's hours should be reduced accordingly: Kurland by 10%, Cuddy by 20%, and Emeric by 5%. Consequently, the court calculates the lodestar for the 2004 period as follows:

|  | Requested Hours | Deductions | Adjusted Hours | Rate | Total |
| --- | --- | --- | --- | --- | --- |
| Kurland | 193.5 | 10% | 174.2 | 400 | $69,680 |
| Cuddy | 114.6 | 20% | 91.68 | 300 | $27,504 |
| Emeric | 36.5 | 5% | 32.9 | 100 | $3,290 |
| Lackowitz | 80.2 | -- | -- | 150 | $12,030 |
| Schneidman | 1.4 | -- | -- | 150 | $210 |
| Snow | 1.5 | -- | -- | 400 | $600 |
| **Total** |  |  |  |  | **$113,314** |

The court calculates the lodestar for the 2005 - 2006 period as follows:

|  | Requested Hours | Deductions | Adjusted Hours | Rate | Total |
| --- | --- | --- | --- | --- | --- |
| Kurland | 386.4 | 10% | 347.76 | 400 | $139,104 |
| Cuddy | 409.8 | 20% | 327.84 | 300 | $98,352 |
| Emeric | 57 | 5% | 54.15 | 100 | $5,415 |
| JB | 0.1 | -- | -- | 150 | $15 |

---

[10] Counsel also billed many hours concerning a Louisiana lawsuit, but the Court is aware, based on conferences and submissions in this case, that LETH was involved in a bankruptcy proceeding in Louisiana. I therefore conclude that the Louisiana hours are reasonable.

| | | | | | |
|---|---|---|---|---|---|
| Lackowitz | 10.1 | -- | -- | 150 | $1,515 |
| MW | 1 | -- | -- | 150 | $150 |
| EH | 4 | -- | -- | 150 | $600 |
| MJL | 2.7 | -- | -- | 150 | $405 |
| RSH | 0.5 | -- | -- | 150 | $75 |
| **Total** | | | | | **$245,631** |

Accordingly, plaintiff's total award for attorneys' fees amounts to $358,945. I find this lodestar reasonable in light of the complex history of this case. Moreover, I am persuaded that the high quality and diligence of plaintiff's counsel warrant a substantial award of fees. Thus, I am awarding plaintiff $358,945 in attorneys' fees.

    *D.*    *Costs*

Plaintiff also seeks reimbursement for costs incurred from July, 2004 through March, 2006 totaling $15,355.94. Plaintiff seeks $4,686.58 for the 2004 period and $6,553.28 for the 2005 - 2006 period. These costs include fees for long-distance phone service, faxes, postage, travel, court-tracking fees, ECF charges, photocopying, court reporting, and transcripts. These amounts are reasonable and compensable. *See Aiello*, 2005 WL 1397202, at *8. Moreover, the Stipulation and Order provides for reimbursement for costs. *See* Docket Entry 28, ¶ 3. Additionally, plaintiff seeks $1,405.25 in court reporter fees for depositions and $2,710.83 for legal fees for a Florida law firm's services. Docket Entry 59. Again, these amounts are reasonable and appropriately compensable. *See Aiello*, 2005 WL 1397202, at *8. With respect to online research services, however, courts in the Eastern District of New York have not allowed a party to recover these costs, following *U.S.A. ex rel. Use and Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996). *See King v. JSC Enters.*, 325 F. Supp. 2d 162, 171-72 (E.D.N.Y. 2004). Accordingly, I am awarding

plaintiff $15,290.91 for costs incurred from July, 2004 through March, 2006, after subtracting $65.03 in online research services.

## Conclusion

For the reasons discussed above, plaintiff is awarded $374,235.91 comprised of $358,945 in attorneys' fees and $15,290.91 for costs for the time period from July, 2004 through March, 2006.

**SO ORDERED.**

**Dated:**        **Brooklyn, New York**
                 **September 20, 2006**

                                                         /s/
                                        **STEVEN M. GOLD**
                                        **United States Magistrate Judge**